# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | | |
|---|---|---|
| **MORRIS C. JOHNSON** | * | **CIVIL ACTION NO.  07-0601** |
| **VERSUS** | * | **JUDGE JAMES** |
| **MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAGISTRATE JUDGE HAYES** |

## REPORT & RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits.  The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

## Background & Procedural History

Morris C. Johnson filed applications for Disability Insurance Benefits and Supplemental Security Income payments on July 21, 1999, and August 6, 2003.  (Tr. 106, 109).  These prior applications were denied at the initial stage of the administrative process, and further review is not indicated by the record.  *Id*.  Johnson filed the instant applications for Disability Insurance Benefits and Supplemental Security Income payments on December 15, 2005.  (Tr. 33-35, 110-112).  He alleged disability since May 13, 2005, due to his back, diabetes, and kidney problems. (Tr. 33, 46).  The claims were denied at the initial stage of the administrative process.  (Tr. 23, 25-28, 113).  Thereafter, Johnson requested and received an August 3, 2006, hearing before an Administrative Law Judge ("ALJ").  (Tr. 188-202).  However, in an October 17, 2006, written

decision, the ALJ determined that Johnson was not disabled under the Act, finding at Step Five of the sequential evaluation process that he was able to make an adjustment to work that exists in substantial numbers in the national economy.  (Tr. 9-17).  Johnson appealed the adverse decision to the Appeals Council.  Nonetheless, on January 29, 2007, the Appeals Council denied Johnson's request for review; thus the ALJ's decision became the final decision of the Commissioner. (Tr. 4-6).

On April 2, 2007, Johnson sought review before this court.  He alleges the following errors:

(1)      plaintiff suffered prejudice due to an invalid waiver of his statutory right to counsel;

(2)      the Commissioner's residual functional capacity determination is not supported by substantial evidence;

(3)      new and material evidence warrants remand; and

(4)      the Commissioner inappropriately relied upon the Medical-Vocational Guidelines to find plaintiff not disabled.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards.  *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).  Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v.*

2

*Perales*, 402 U.S. at 401. While substantial evidence lies somewhere between a scintilla and a preponderance, substantial evidence clearly requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). Conversely, a finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Secretary. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

### Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled

3

under the SSA.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows,

(1)     An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2)     An individual who does not have a "severe impairment" of the requisite duration will not be found to be disabled.

(3)      An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4)     If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5)     If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See, Boyd v. Apfel*,  239 F.3d 698, 704 -705 (5th Cir. 2001);  20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).  When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated.  *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).  If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis.  *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

1) Waiver

A claimant is entitled to receive adequate notice of his right to counsel at an administrative  hearing.  *Castillo v. Barnhart*, 325 F.3d 550, 552 (5th Cir. 2003)(citing, *Brock v. Chater*, 84 F.3d 726, 729 (5th Cir. 1996).  At the hearing in this matter, the ALJ confirmed that

4

Johnson had received a letter from the agency explaining how he might receive free representation and/or how to retain counsel willing to represent him on a contingent basis.  (Tr. 190-191, 30-32).  Importantly, the letter also explained how a representative could benefit a claimant.  *Id*.  Johnson acknowledged that he understood the letter.  *Id*.  Moreover, Johnson said that he had an attorney who was representing him, but that he was not present at the hearing.  *Id*.  The ALJ offered to afford Johnson more time to obtain counsel, but after much equivocation, Johnson elected to proceed with the hearing.  (Tr. 191-193).

Plaintiff argues that the following colloquy with the ALJ misled him and invalidated his waiver:

ALJ:   Well, we will give you the time then, Morris.  If you think representation would be useful to you

A:   I, I, I mean don't know, if it would or not I mean

ALJ:   Well, you're the one who has to make that call, Morris.  Evidently you thought it would because you went to, you went to an attorney before.  The lady who is helping me today will give you copies of the correspondence we were just talking about.  You look it over.  You decide what you want to do.  If you think you would like to try to get representation, then go ahead and attend do [sic] that right away.

A:   Okay.

ALJ:   If you think you would like to come in and make your own representation, you let me know and we'll schedule another hearing.

A:   Now it, it, it, I don't know if it would make a different, [sic]  I mean it's kind of hard for me to get back and forth here.

ALJ:   Well --

A:   I don't know who to get in my best interest, Your Honor, is I guess what I'm trying to say.

ALJ:    Well, I guess then if, I'm not going to require [sic] to make that decision while you're sitting here in the hearing room today looking at me.  I realize that it is a problem getting back and forth, but that's not something either one of us can do much about.

A:    No, sir.

ALJ:    The, I am not telling you, Morris, that you need a lawyer.

A:    Okay.

ALJ:    The, as I explained, the decision is going to be made on the basis of what the doctors found when they examined you and the credibility of your testimony.

A:    Right.

ALJ:    The best lawyer in Louisiana can't take a bad case –

A:    Can't change that, but I –

ALJ:    – and make a good one.  The worst lawyer in Louisiana can't take a good case and make a bad one.

A:    But I'd just rather go on through the proceedings today then, Your Honor, if that's permissible.

ALJ:    Well, it is permissible, but the problem is that if the medical information in your record supports your claim and I can make an award, then everybody is happy including the two of us.  But if it doesn't, I don't want you thinking, and I have to tell you no, then I don't want you thinking, wait a minute –

A:    Yeah.

ALJ:    – it might have been different if I had had a lawyer.

A:    The lawyer wouldn't make no difference.  You just said the medical records speaks for themself, you know.  I've, I guess I was just going to go through today and I, I –

ALJ:    All right.  Well, we'll go ahead and proceed then. . . .

(Tr. 192-193).

6

It is manifest that plaintiff was aware of his right to potentially free representation. Instead, he argues that his decision to waive counsel was unduly influenced by the ALJ's intimation that counsel would not affect the outcome of the case.  Of course, even if plaintiff's waiver was invalid, he must still prove that he was prejudiced thereby.  *Brock v. Chater*, 84 F.3d 726, 729 n1 (5th Cir. 1996).  That is, he must point to "evidence that would have been adduced and that could have changed the result had [he] been represented by an attorney."  *Castilllo, supra*. (citation omitted) (internal quotation marks omitted).  In other words, plaintiff must prove that the ALJ was incorrect, -- counsel would have made a difference.

To this end, plaintiff argues that counsel might have requested a consultative orthopedic examination or issued a subpoena for Dr. Hebert's attendance at the hearing.  (Pl. Memo., pg. 6).[1] However, there is no indication that a consultative orthopedic examination or further questioning of Dr. Hebert would have produced evidence favorable to plaintiff.  Something more is required than a speculative assertion that other tests or testimony might have made a difference, e.g., a supporting statement from the doctor.  *See, Hyde v. Astrue*, Docket No. 07-30748 (5th Cir. May 12, 2008) (unpubl.).  *Id.*[2]

Plaintiff also complains that the hearing was only sixteen minutes long, and that counsel could have further questioned Johnson about the effects of his pain.  When, as here, the claimant is unrepresented, the ALJ owes a heightened duty to "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts."  *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir.

---

[1]  Dr. Hebert was a consultative physician who specializes in internal medicine and pulmonary disease.  (Tr. 84-87, 100).

[2]  Plaintiff also argues that a subpoena issued to Dr. Hebert may have resulted in the production of records regarding a prior examination in 1999.  (Tr. 84).  However, a 1999 examination is not calculated to be relevant to plaintiff's instant disability claim which has a 2005 alleged onset date.

7

1996) (citations and internal quotation marks omitted).  Again, however, reversal is not required

unless the claimant demonstrates not only that the ALJ failed to adequately develop the record,

but that he suffered resulting prejudice.  *Id*.  The brevity of the hearing in this case does not

demonstrate that the ALJ breached his duty to develop the record.  *See, James v. Bowen*, 793

F.2d 702 (5th Cir. 1986) (ten minute hearing not inadequate).  Moreover, the instant ALJ asked

Johnson about his diabetes, hypertension, and his ability to stand, walk, and sit.  (Tr. 194-201).

The ALJ further asked Johnson whether there was anything else about his situation that needed to

be discussed.  (Tr. 201).  The extent of the ALJ's questioning is not materially different than the

hearing held in *James v. Bowen*, which the Fifth Circuit deemed sufficient to develop the relevant

facts.  *James, supra*.

In sum, plaintiff has not demonstrated that the ALJ's statements were misleading or that

they otherwise invalidated his voluntary consent to proceed without representation.  *See, Castillo,*

*supra*.  Additionally, plaintiff has not demonstrated resulting prejudice.

2) Residual Functional Capacity

The ALJ found at Step Two of the sequential evaluation process that Johnson suffered

from severe impairments of diabetes mellitus, arterial hypertension, and degenerative disc

disease of the lumbar spine.  (Tr. 14).  However, the ALJ concluded that the impairments were

not severe enough to meet or medically equal any of the impairments listed in the Category of

Impairments in Appendix 1 to Subpart P, Social Security Regulations No. 4. (Tr. 14-15).

The ALJ then determined that Johnson retained the residual functional capacity to

perform a full range of light work.  (Tr. 15).[3]  Plaintiff's argument centers upon the

---

[3] Light work entails:
> . . . lifting no more than 20 pounds at a time with frequent lifting or
> carrying of objects weighing up to 10 pounds.  Even though the

Commissioner's alleged failure to obtain a pulmonary function study to evaluate his bronchitis. Plaintiff points to an exchange between a disability examiner, Glenis Penn, and two agency physicians, Drs. Dzurik and Craig.[4]  Penn first asked Dr. Dzurik whether there was enough information in the record for a limited light residual functional capacity.  (Tr. 24L).  If so, Penn believed that a finding of disabled would ensue.  *Id*.  If not, Penn stated that he would have to send Johnson for a pulmonary function study due to alleged shortness of breath, secondary to bronchitis.  *Id*.  Dr. Dzurik instructed Penn to obtain the pulmonary function study because, at best, the record then supported a residual functional capacity for light work.  (Tr. 24K).

Penn then asked Dr. Craig whether it was necessary to obtain a pulmonary function study or whether there was enough evidence in the record to make a decision.  (Tr. 24J).  Dr. Craig replied that no further evaluation was needed, and that Johnson retained a residual functional capacity for a full range of light work.  (Tr. 24I).

The ALJ has an obligation to fully and fairly develop the facts.  However, this duty does not extend to possible disabilities that are not alleged or to those disabilities that are not clearly indicated on the record.  *Leggett v. Chater*, 67 F.3d 558 (5th Cir. 1995); *Ripley v. Chater*,67 F.3d

weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

[4]  Box 30 of the Disability Determination and Transmittal indicates that Penn was a disability examiner, not a physician.  (Tr. 23).

9

552 (5th Cir. 1995); *Kane v. Heckler*, 731 F.2d 1216 (5th Cir. 1981).  To obtain reversal due to the ALJ's failure to adequately develop the record, the claimant must also demonstrate resulting prejudice.  *Brock, supra*. "To establish prejudice, a claimant must show that he could and would have adduced evidence that might have altered the result." *Id.* (Internal quotes omitted).

Here, plaintiff did not allege bronchitis or shortness of breath as a limitation on his disability report initially or prior to the administrative hearing.  (Tr. 33, 71).  Also, the context of the exchange between Dr. Dzurik and Penn reveals that Dr. Dzurik told Penn to obtain the pulmonary function study only because Penn said that he would do so if the record did not support a residual functional capacity for less than light work.  (Tr. 24K-L).  In effect, both Drs. Dzurik and Craig agreed that the record supported a residual functional capacity for the full range of light work.  Solely the disability examiner, Penn, was initially inclined to obtain a pulmonary function study.  Of course, a disability examiner is not a medical doctor, and his opinion is not considered an acceptable medical source statement or afforded the same weight as an opinion of a medical or psychological consultant of the state agency.  20 C.F.R. 404.1527(f) and 416.927(f). The opinion of the disability examiner can only be considered as lay evidence and is afforded little probative value.  20 C.F.R. 404.1513(d)(3) and 416.912(d)(3).

Penn's inclination to obtain a pulmonary function study appears to stem from plaintiff's complaint of bronchitis and shortness of breath expressed during the February 2, 2006, consultative examination conducted by David Hebert, M.D.  (Tr. 84-87).  During the examination, plaintiff reported cough and shortness of breach due to bronchitis which he had contracted three weeks earlier.  *Id*.  Although Dr. Hebert specializes in internal medicine and pulmonary disease, he did not diagnose any impairments or limitations due to plaintiff's reported shortness of breath.  *Id*.  Moreover, Dr. Hebert did not call for additional testing – likely because

10

the bronchitis was a recent diagnosis, with no indication that it was a chronic or permanent condition, i.e. expected to last at least 12 months.[5]  Dr. Hebert's additional findings fully support the ALJ's residual functional capacity.[6]

3) <u>New Evidence</u>

In the aftermath of the ALJ's unfavorable decision, Johnson submitted additional evidence to the Appeals Council.  This evidence constitutes part of the instant record – provided that it was new, material and related to the period before the ALJ's decision.  *See, Higginbotham*

---

[5]  Even if plaintiff had demonstrated that the ALJ should have obtained additional testing, he has not established resulting prejudice. An August 31, 2006, physical examination indicated that Johnson's lungs were clear to auscultation bilaterally, with no wheezes, rhonchi or rales. (Tr. 120). An August 31, 2006, x-ray showed that plaintiff had no more than mild emphysema, with no pulmonary disease. (Tr. 185). A subsequent x-ray showed that plaintiff's lungs were clear, with no infiltrates or definite pleural effusions. (Tr. 154).

[6]  Dr. Hebert's report indicates that Johnson reported severe back pain and numbness down his left leg for the past 3-5 years. (Tr. 84-87). Approximately three years earlier, Johnson was diagnosed with diabetes mellitus and arterial hypertension. *Id*. He also reported unknown kidney problems. *Id*. At the time of the evaluation, Johnson was taking an antibiotic because he had contracted a bad lung infection three weeks earlier. *Id*. Johnson's lungs had minimal 1+ wheezes and 1+ ronchi throughout. *Id*. Straight leg raising was negative. *Id*. Plaintiff was able to flex the lumbar spine to 80 degrees and extend to 15 degrees. *Id*. There was no evidence of peripheral arterial disease. *Id*. Motor strength in all four extremities was 5 out of 5. *Id*. There was mild numbness and decreased pain sensation in the left foot and ankle area. *Id*. Otherwise, the sensory system was intact. *Id*. No evidence of depression, anxiety, or psychosis. *Id*. Hebert noted mild narrowing (50%) of the disc space between L4-L5. *Id*. The disc space between L5-S1 was 75-80% narrowed. *Id*. Heavy calcification of the abdominal aorta was noted. *Id*.
   Hebert diagnosed poorly controlled arterial hypertension, with no evidence of end organ damage; diabetes mellitus, with mild sensory peripheral neuropathy involving left foot and ankle area; degenerative disc disease of the lumbar spine at L4-L5 and L5-S1 levels with good preservation of function, and no significant abnormalities of the lower extremities; mild decrease in lumbar spine range of motion; well-healed fracture of the right tibia; and significant weight loss. *Id*. Hebert opined that Johnson's function in his lumbar spine had improved since Hebert last saw him in 1999. *Id*. Hebert further opined that there was no medical reason why Johnson could not perform routine walking, sitting, standing, carrying and lifting in an eight hour day. *Id*. Due to Johnson's significant degenerative disc disease, Hebert limited lifting to no more than 25 pounds. *Id*.

*v. Barnhart*  405 F.3d 332 (5ᵗʰ Cir. 2005); 20 C.F.R. § 404.970(b).[7]  The evidence submitted to the Appeals Council consists of additional medical records, a consultative psychological evaluation, and an attached medical source statement of ability to do work-related activities (mental).  (Tr. 114-187).  The undersigned finds, however, that the evidence is not "material"; *i.e.*, relevant, probative, and likely to have changed the outcome of the Commissioner's determination.  *See, Pierre v. Sullivan,* 884 F.2d 799, 803 (5ᵗʰ Cir. 1989).[8]

Jerry L. Whiteman, Ph.D. administered the consultative psychological evaluation on December 1, 2006, – approximately one and one-half months after the ALJ's decision.  (Tr. 114-117).  Dr. Whiteman diagnosed somatoform disorder, provisional and Schizo Typal/Avoidant Personality.  *Id*.  Whiteman opined that the somatoform disorder would cause moderate or marked limitations in plaintiff's ability to perform work-related functions.  (Tr. 118-119).  Dr. Whiteman noted, however, that plaintiff's responses to the assessment were potentially exaggerated in an effort to obtain secondary gain.  (Tr. 117).  Whiteman could not rule out the possibility of malingering.  *Id*.

A diagnostic criterion for somatoform disorder requires that the symptom not be

---

[7]  *Higginbotham* cited *Perez v. Chater*, and *Wilkins v. Sec'y Dept. of Health Human Servs.* as support for its finding that post-ALJ evidence is to be considered part of the record. *See, Higginbotham*, 405 F.3d at fn. 3 (*citing inter alia*,  *Perez v. Chater*, 77 F.3d 41, 44–45 (2d Cir.1996) and *Wilkins v. Sec'y, Dept. of Health Human Servs*., 953 F.2d 93, 96 (4th Cir.1991) (*en banc*)).  Both *Perez* and *Wilkins* require that the subsequent evidence be new, material and relevant to the pre-ALJ decisional period.  *Perez, supra*; *Wilkins, supra* (citing, 20 C.F.R. § 404.970(b)).

[8]  Despite the presence of new evidence in *Higginbotham*, the panel on subsequent appeal upheld the district court's decision to affirm the Commissioner's denial of benefits. *Higginbotham v. Barnhart*, 163 Fed. Appx. 279, 2006 WL 166284 (5ᵗʰ Cir. 1/10/2006) (unpubl.) ("*Higginbotham II*").  The panel discounted a diagnosis of disability by claimant's treating physician as conclusory and unsupported. *Id*.

"intentionally produced or feigned (as in Factitious Disorder or Malingering)." *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition, DSM-IV, pgs. 451-452.  Dr. Whiteman's inability to rule out the possibility of malingering undermines his diagnosis of somatoform disorder and the resulting limitations.  Moreover, there is no indication that the evaluation reflected plaintiff's condition as of the hearing or at the time of the ALJ's decision, rather than a "later-acquired disability or . . . the subsequent deterioration of the previously non-disabling condition."  *Haywood v. Sullivan*, 888 F.2d 1463, 1471-1472 (5th Cir. 1989) (quoting *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir.1985) (internal quotation marks omitted)).[9]

Plaintiff also submitted additional medical records to the Appeals Council documenting treatment that he received between the time of the administrative hearing and the ALJ's decision. The records document a diagnosis and treatment for renal failure.  (Tr.118-187).[10]  However, the treatment and diagnosis were rendered entirely by two physician assistants, Carlos Hernandez and M. Holman.  (*See e.g.*, Tr. 120, 125).[11]  Under the regulations, physician assistants are not "acceptable medical sources."  20 C.F.R. § 404.1513 & 416.913.  Information from "other sources" such as physician assistants cannot establish the existence of a medically determinable

---

[9]  During the relevant period, the consultative physical examiner observed that Johnson exhibited no evidence of depression, anxiety, or psychosis.  *Id.*  (Tr. 84-87).

[10]  Fifth Circuit cases suggest that the relevant period for a disability claim extends until the date of the administrative hearing.  *Hammond v. Barnhart*, 132 Fed. Appdx. (5th Cir. May 17, 2005) (unpubl.); *Haywood*, 888 F.2d at 1472; *Johnson*, 767 F.2d at 183.  Medical evidence that post-dates a hearing may be considered, provided that it addresses the severity of the claimant's pre-hearing condition.  *Hammond, supra.*  Here, plaintiff's post-hearing records regarding renal function are potentially relevant to his pre-hearing condition because he mentioned unknown kidney problems during his pre-hearing physical examination.  (Tr. 84).

[11]  Their signatures appear throughout the records.

13

impairment.  SSR 06-03p.  Although, information from "other sources" may be used to assess the severity of an impairment or the limitations imposed by an impairment, Hernandez and Holman's notes and reports from the relevant period do not impose any limitations upon plaintiff's functional ability.  *Id*.  (Tr. 118-187).[12]  In addition, plaintiff did not complain of any functional limitations due to renal failure during the relevant period.

Plaintiff also seeks remand so that the Commissioner can consider new evidence which he presented in the first instance to this court.  (Pl. Exh. [doc. # 15]).[13]  The new evidence consists of a July 11, 2007, letter from physician assistant, Carlos Hernandez, and an accompanying medical source statement of ability to do work-related activities (physical).  *Id*.  A court may order additional evidence to be taken before the Commissioner "only upon a showing that there is new evidence which is material and there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  *Pierre,* 884 F.2d at 803 (citing, 42 U.S.C. § 405(g).  To justify  remand, the evidence must be "new," and not merely cumulative of what is already in the record.  *Id.*  (citation omitted).  The evidence must also be "material"; *i.e*., relevant, probative, and likely to have changed the outcome of the Commissioner's determination.  *Id.*  Finally, the claimant must demonstrate good cause for not having incorporated the new evidence into the administrative record.  *Id.*

At the outset, plaintiff has not proffered any explanation for his failure to obtain and

---

[12]  The laboratory results also indicate that plaintiff's condition was not severe enough to meet or equal potentially applicable listed impairments.  20 C.F.R. Subpart P, App. 1, Sections 6.02 & 6.06.  Also, in a post-decision letter, Hernandez observed that Johnson's renal function did not "dramatically worsen" until some time after he began treatment.  (July 11, 2007, letter from Carlos Hernandez; Pl. Exh. [doc. # 15]; *see also*, discussion, *infra*.

[13]  Plaintiff seeks remand pursuant to sentence six of  42 U.S.C. § 405(g) only in the event that the court does not order remand under the fourth sentence.

14

present this evidence to the Appeals Council.  When plaintiff sought review before the Appeals

Council, he was represented by Anthony Mitchell, a highly experienced and dedicated non-

attorney representative in social security cases.  (Tr. 8).  Moreover, prior to the appeal, Mr.

Mitchell sent plaintiff for a consultative psychological evaluation and obtained medical records

documenting plaintiff's treatment by Hernandez.  There is no apparent reason why plaintiff could

not have obtained a letter and/or medical source statement from Hernandez in December 2006.

His failure to do so, together with the letter's statement that Johnson's condition gradually

worsened, combine to suggest that at the time of the hearing and ALJ decision, plaintiff's

impairments and resulting limitations were not as severe as subsequently indicated.  *See*,

*Hammond, supra* (evidence that details the worsening of a claimant's condition after the date of

the hearing is not material).  Accordingly, plaintiff has neither established that the new evidence

is material, nor demonstrated good cause for failing to incorporate the evidence into the

administrative record.  *Pierre, supra*.  Plaintiff's subsequent deterioration, however, certainly

may form the basis for a new claim.  *Johnson*, 767 F.2d at 183.

4) Use of Grids

        The ALJ determined that plaintiff could not return to his past relevant work.  However,

because plaintiff was an "individual closely approaching advanced age,"[14] with a high school

education, and residual functional capacity to perform light work, the ALJ used the Medical-

Vocational Guidelines at Step Five of the sequential evaluation process to conclude that plaintiff

was not-disabled.  (Tr. 16-17); 20 C.F.R. § 404.1569; Rule 202.14, Table 2, Appendix 2, Subpart

P, Regulations No. 4.

        Plaintiff contends that his arterial hypertension and pain constitute non-exertional

_____

        [14]  Plaintiff was 54 years old at the time of the ALJ's decision.  (Tr. 16).

impairments which preclude the ALJ's reliance upon the Grids.  However, "[w]hen the characteristics of the claimant correspond to criteria in the Medical-Vocational Guidelines of the regulations, . . . and the claimant either suffers only from exertional impairments or his non-exertional impairments do not significantly affect his residual functional capacity, the ALJ may rely exclusively on the Guidelines in determining whether there is other work available that the claimant can perform."  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987) (citations omitted); *see also*, *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999); *Selders v. Sullivan*, 914 F.2d 614, 618-619 (5th Cir. 1990).

Here, there is substantial record evidence to support the ALJ's determination that plaintiff's impairments did not impose any non-exertional limitations inconsistent with the ability to perform the full range of light work.  Thus, the ALJ was not obliged to consult a vocational expert.

For the reasons stated above, the undersigned finds that the Commissioner's decision is supported by substantial evidence and is free of legal error.  Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision to deny benefits be **AFFIRMED**, and that this civil action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED**

**FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 28th day of May, 2008.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

17